1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STEPHANIE E. DALTON,                    No.  2:17-cv-00443 CKD

12                   Plaintiff,

13         v.                                 <u>ORDER</u>

14    NANCY A. BERRYHILL, Acting
      Commissioner of Social Security,

15
                     Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

20    XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

21    plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for

22    summary judgment. The parties have consented to magistrate judge jurisdiction pursuant to 28

23    U.S.C. § 636(c)(1). ECF Nos. 6 and 7.

24    <u>BACKGROUND</u>

25         Plaintiff, born February 24, 1974, applied on July 24, 2013 for SSI, alleging disability

26    beginning August 18, 2011.  Administrative Transcript ("AT") 210.  Plaintiff alleged she was

27    unable to work due to fibromyalgia, anxiety, morphea, irritable bowel syndrome, carpal tunnel,

28    leukocytosis, chondromalacia patella, and migraines.  AT 105.  In a decision dated September 10,

1

2015, the ALJ determined that plaintiff was not disabled.[1]  AT 21-34.  The ALJ made the

following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social
> Security Act through December 31, 2015.
>
> 2.  The claimant has not engaged in substantial gainful activity since
> August 18, 2011, the alleged onset date.
>
> 3.   The claimant has the following severe impairments:
> fibromyalgia, migraines/headaches, irritable bowel syndrome,
> obesity, chondromalcia of the bilateral patella, anxiety disorder, and
> depressive disorder.
>
> 4.  The claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful
> activity?  If so, the claimant is found not disabled.  If not, proceed to
> step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If
> so, proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three:  Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1? If so, the claimant is automatically determined
> disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past
> work? If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
burden if the sequential evaluation process proceeds to step five.  Id.

1

2

3

4

5

6

 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except frequent handling, fingering, and feeling; occasional stooping, squatting, crouching, crawling, and kneeling; occasional climbing of stairs and ramps, but never ropes, ladders, or scaffolds; and the workplace should be free of chemicals, dust, smoke, and fumes.  Regarding mental functionality, the claimant is capable of unskilled, repetitive, routine work and will be absent from work one time per month.  She will be off task up to 10% of the time at work, but still able to meet minimum production requirements of the job.

7

 6. The claimant cannot perform any of her past relevant work.

8

9

 7. The claimant was born on February 24, 1974 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

10

11

 8. The claimant has at least a high-school education and is able to communicate in English.

12

 9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

13

14

 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

15

16

AT 23-32.

ISSUES PRESENTED

17

18

19

20

21

22

 Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ did not give proper weight to the opinion of plaintiff's treating physician Dr. Scheidt; (2) the ALJ did not provide clear and convincing reasons to discredit plaintiff's subjective complaints; (3) the ALJ did not properly evaluate the cumulative effects of plaintiff's impairments; and (4) the Commissioner did not meet her burdens at Step Five of the sequential evaluation.

23

LEGAL STANDARDS

24

25

26

27

28

 The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  <u>Connett v. Barnhart</u>, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Evidence

Plaintiff asserts that the ALJ failed to properly credit the opinion of her treating physician, Dr. Scheidt, and did not provide specific and legitimate reasons, based on substantial evidence, for discounting Dr. Scheidt's September 2014 assessment of plaintiff's ability to do work-related activities. Dr. Scheidt found plaintiff significantly limited due to fibromyalgia and migraines.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

////

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala , 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Judy Scheidt, a Doctor of Osteopathic Medicine (D.O.), began treating plaintiff in January 2012 for bilateral knee pain and migraines. AT 397-400. At a March 2012 follow-up visit, plaintiff reported migraines, knee pain, and numbness in her hands to Dr. Scheidt. AT 391. In October 2012, Dr. Scheidt treated plaintiff for anxiety and depression, with follow-up visits in November and December of 2012. AT 358-359, 361-362, 364-366. Dr. Scheidt continued to evaluate and treat plaintiff in 2013 and 2014, and medical records identified her as plaintiff's primary care physician (PCP) as of October 2013. AT 716.

On September 16, 2014, Dr. Scheidt filled out a functional capacity questionnaire for plaintiff, whom she was treating for "fibromyalgia, migraine headache, IBS, morphea, [and] depression/anxiety." AT 634. Dr. Scheidt opined that plaintiff could lift less than 10 pounds, sit for less than 2 hours, and stand for less than 2 hours, all due to fibromyalgia. AT 635. She indicated that plaintiff would have to lie down at unpredictable intervals during a shift four days a week, due to migraines. AT 636. Dr. Scheidt further opined that plaintiff could only

occasionally perform postural or manipulative activities and must avoid all pushing and pulling,

citing "fibromyalgia pain with certain movements." AT 637-637. She stated that plaintiff would

miss more than three days of work per month and would otherwise be in moderate or severe pain

100% of the time. AT 638, 640. Dr. Scheidt further opined that, due mental impairments,

plaintiff would have limitations in the ability to remain at work for a full day, complete tasks, and

stay at work for an entire shift. AT 639. Finally, she stated that plaintiff had been "functioning at

the level described in this form" for more than three years. AT 640.

The ALJ "found the opinions expressed in [Dr. Scheidt's September 2014 report]

unpersuasive." AT 31. After listing some of the above limitations, the ALJ wrote:

> Dr. Scheidt attributes these limitations primarily to diagnoses of
> fibromyalgia and migraines without any citation to objective medical
> findings that would support such drastic limitations. Additionally,
> she concluded that the claimant would be unable to work for a full
> day, complete tasks, or complete an entire scheduled work shift
> without identifying any cause at all. (Ex. 11F/7.)

AT 31.[2]

The ALJ continued: "Concurrent notes . . . are similarly void of any explanation. (Ex.

15F/5.) In fact, there is no examination of the claimant's back, neck, extremities, etc., at all. (Ex.

15F/6-7.)" AT 31. The ALJ cited Dr. Scheidt's September 16, 2014 notes which state:

> Plaintiff was diagnosed last year with fibromyalgia by Dr. Welk in
> Mt. Vernon, rheumatologist. She also has a lengthy history of
> migraine HA. . . . She says that if she does any housework for very
> long, she gets very stiff and achy. She has a hard time even lifting a
> gallon of milk or a basket of laundry at home. She has lost jobs due
> to missing too much work from her migraines. She will get a
> migraine for no week, then will have 3-4 a week. She has tried
> several medications without relief, she often just needs to rest. I will
> have her see neurology for consideration of botox.

AT 675. Dr. Scheidt conducted a physical exam, which was unremarkable, and the above notes

---

[2] This section of the form asked the physician to "indicate whether your patient experiences limitations in ability to tolerate normal stressors of a competitive environment as listed below, and state the cause of the limitations." AT 639. Dr. Scheidt checked boxes for "remaining at work for a full day," "completing tasks," and "staying at work for the entire scheduled work shift." No space was provided to list the causes of these limitations, and Dr. Scheidt did not write in any.

appear to be based on plaintiff's subjective complaints.  See AT 676 ("Complains of stiffness, muscle weakness and muscle aches"; "complains of headaches").  In her exam, Dr. Scheidt found plaintiff "alert and cooperative" with "normal mood and affect" and "normal attention span and concentration."  AT 677.

The ALJ's stated that Dr. Scheidt's treatment of plaintiff's fibromyalgia and migraines was limited because she referred plaintiff to a rheumatologist for fibromyalgia and to a neurologist for migraines.  AT 31; see AT 572-573, 643.[3]  "Dr. Scheidt primarily treated the claimant for acute transient conditions, such as bronchitis and medication management," the ALJ wrote.  AT 31.  "Thus, while Dr. Scheidt was the claimant's primary physician, she did not exam or treat most of the conditions that she opined caused the limitations.  Consistent with that role, her clinical notes provided no explanation for the drastic limitations posited in the [September 2014] form."  AT 31.  The ALJ further found that the "overall medical record was not indicative of such limitations."  AT 31.

Plaintiff argues that medical evidence supports Dr. Scheidt's survey findings, including specialist notes that Dr. Scheidt reviewed.  See AT 666 (rheumatologist's August 2014 notes cc'd to Dr. Scheidt).  After the rheumatologist diagnosed plaintiff with fibromyalgia in July 2013[4], Dr. Scheidt's progress notes referred to this diagnosis and related symptoms.  See AT 684 (September 2014 note that "she can barely lift coffee pots and other items . . . her arms hurt so bad with just light housework that she cannot do anything for several days later").  However, the purpose of plaintiff's visit with Dr. Scheidt on that occasion was to treat cold symptoms.  AT 684.  Similarly, on July 3, 2014, Dr. Scheidt noted plaintiff's "severe" fibromyalgia, but the visit was prompted by plaintiff's hitting her elbow on the car door.  AT 694.

The court has reviewed both Dr. Scheidt's progress notes concerning plaintiff's fibromyalgia and migraines and neurologist Dr. Welk's progress notes as of July 2013.  AT 391,

---

[3] Plaintiff was referred to neurologist Dr. Kara Warden in November 2014, two months after Dr. Scheidt filled out the disability form, so Dr. Scheidt could not have been aware of Dr. Warden's findings when filling out the form.  AT 653.

[4] See AT 572.

397-399, 666, 684, 686, 695, 707. While Dr. Scheidt regularly noted plaintiff's fibromyalgia, there is little evidence of the numerous significant limitations marked on the disability form. There is evidence that plaintiff had frequent migraines (e.g., AT 391 (1-2/week in March 2012), 646 (migraines 15 days or more per month in November 2014)), but the ALJ discussed the evidence of plaintiff's migraines at length, concluding they were somewhat responsive to medication and not as frequent or debilitating as claimed. AT 28.

Based on this record, the undersigned concludes that the ALJ's reasons for discounting Dr. Scheidt's September 2014 disability form – i.e., a lack of medical evidence for the claimed limitations and Dr. Scheidt's treatment of mainly acute and transient conditions – constitute specific and legitimate reasons supported by substantial evidence.

B. Credibility

Plaintiff next asserts that the ALJ erred in discrediting plaintiff's testimony and subjective complaints of pain.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "some of the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AT 28. First, the ALJ noted that plaintiff was not diagnosed with fibromyalgia until July 2013 (nearly two years after the alleged disability onset date), and that plaintiff apparently did not pursue rheumatologist Dr. Welk's advice to see a counselor for stress management "as a way to improve fibromyalgia pain." AT 28; see AT 660.

Next, the ALJ found that "the evidence does not corroborate the extent of her alleged migraines and frequently [sic] of dysfunction from such migraines." AT 28. The ALJ cited evidence that plaintiff's treatment for migraines was sporadic (with a gap between March 2012 and August 2014) and that she reported improvement on certain medications. AT 28-29; see, e.g., AT 643 ("started on Topamax 100 mg with marked improvement, resolution of daily headaches and migraines decreased to 1-2 per week"); AT 648 ("Imitrex successful 2/3 of the time in eliminating migraines."). At other times, as plaintiff points out, her migraine medication provided only temporary relief.

The ALJ noted plaintiff's statements to Dr. Scheidt in 2012 that, having been laid off from her job in 2011, plaintiff feared finding a new job due to "low self esteem" and was seeing Dr.

Scheidt for anxiety and depression.  AT 30; <u>see</u> AT 364.  However, the ALJ observed that "the medical record includes minimal mental health treatment and successful engagement in gainful activity for many years."  AT 30.  The ALJ also noted plaintiff's testimony that her job at a call center was terminated in August 2011 due to an error in her medical paperwork after a leave – i.e., not due to a disabling condition that made her unable to perform the work.  AT 30; <u>see</u> AT 52-53.  Plaintiff testified that she periodically applied for work over the next year and turned down one job offer because it was a 45-minute commute from her house.  AT 53-55.

Finally, the ALJ found that plaintiff's

> specific allegations of dysfunction are also inconsistent with her activities.  For example, the claimant alleged that she was unable to sit, stand, or walk for long enough to complete a full workday.  However, the claimant was able to negotiate long plane rides to Texas on a yearly basis.  The claimant took a long road trip to California in 2014, which indicates she is capable of prolonged sitting, as found above.

AT 30; <u>see</u> AT 45-48.  <u>See</u> <u>Tomasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that ALJ properly inferred from plaintiff's travel to Venezuela that he was not as physically limited as he claimed).

Here, the ALJ provided specific reasons for discounting plaintiff's credibility, supported by substantial evidence including plaintiff's failure to seek counseling in relation to her fibromyalgia, her sporadic treatment for migraines and the at least partial effectiveness of such treatment, her claims that mental health issues prevented her from looking for work absent a significant record of mental health treatment, and her multiple long-distance trips with few problems from her alleged disabilities.  The undersigned concludes that the ALJ supplied legally sufficient reasons to make an adverse credibility finding.

C.  <u>Presumptive Disability</u>

Plaintiff next claims that, due to the cumulative effect of her impairments, the ALJ should have found her presumptively disabled under Listing 1.02 (Major Dysfunction of Joints) and 1.04 (Disorder of the Spine).  <u>See</u> AT 24.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of bodily systems and/or diseases severe enough to preclude a person from

performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe as to be irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).  If a claimant's impairment or combination of impairments meets or exceeds a "listing," no specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs.  20 C.F.R. § 404.1520(d).

To meet Listing 1.02, the claimant must show major dysfunction of a joint characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The claimant must also meet either parts (A) involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, or (B) involvement of one major peripheral joint in each upper extremity.  Id.  Here, plaintiff has made no medical showing of "gross anatomical deformity" or the inability to "ambulate effectively" per the regulation.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 100B2b(2) (examples of inability to ambulate effectively include the inability to walk without the use of a walker, two crutches, or two canes).

Listing 1.04A requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscles weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

See 20 C.F.R. Part 404, Subpart P, Appendix 1.  As above, plaintiff has not shown that she meets the requirements of this listing.  Plaintiff argues that her documented fibromyalgia symptoms medically equal the listing for presumptive disability due to Disorder of the Spine.  However, merely alleging the overall functional impact of plaintiff's impairments is insufficient to meet or equal a listing.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).  The undersigned

1    concludes that the ALJ did not err in declining to find plaintiff presumptively disabled.[5]

2       D. <u>Vocational Expert</u>

3       Lastly, plaintiff asserts that the ALJ erred in finding that there were jobs that existed in

4 significant numbers in the national economy that plaintiff could perform. At this step, the ALJ

5 wrote:

> [T]he claimant's ability to perform all or substantially all of the requirements of [the full range of sedentary work] has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as an Addresser, which is sedentary unskilled (SVP 2) work with 12,600 jobs in the nation; table worker, which is sedentary unskilled (SVP 2) work with 8,000 jobs in the nation, hand bander, [also SVP 2], with 11,300 jobs in the nation; callout operator, [also SVP2], with 1,300 jobs in the nation; and a telephone quotation clerk, [also SVP2], with 69,000 jobs in the nation.
>
> Pursuant to SSR 00-4p, I have determined that the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles.

16 AT 33 (DOT #s omitted); <u>see</u> AT 64-67. The ALJ noted that the table worker and hand bander

17 jobs had been reduced by 50% to accommodate for environmental restrictions in plaintiff's RFC.

18 AT 33. <u>See</u> 20 C.F.R. § 404.1566(b) (providing that "[w]ork exists in the national economy when

19 there is a significant number of jobs (<u>in one or more occupations</u>) having requirements which you

20 are able to meet") (emphasis added). Because more than 25,000 jobs in total were available,

21 plaintiff's argument that four listed jobs had fewer than 25,000 positions available is unavailing.

22 <u>CONCLUSION</u>

23       For the reasons stated herein, IT IS HEREBY ORDERED that:

24       1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

25 *////*

26

---

27 [5] Plaintiff's remaining argument that the ALJ erred in determining her residual functional capacity relies largely on plaintiff's subjective complaints and Dr. Scheidt's findings, both

28 discussed above.

2.  The Commissioner's cross-motion for summary judgment (ECF No. 21) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  June 7, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/dalton0443.ssi.ckd